IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

VIET GRAGG,

                              Plaintiff,

                                                      Civ. Action No.
                                                      5:03-CV-0904 (NPM/DEP)

           vs.

INTERNATIONAL MANAGEMENT GROUP
(UK), INC., *et al.*,

                              Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

OFFICE OF ROBERT C. KILMER     ROBERT C. KILMER, ESQ.
122 State Street
Suite 220
Binghamton, New York 13901

FOR DEFENDANTS:

MENTER, RUDIN LAW FIRM         MITCHELL J. KATZ, ESQ.
308 Maltbie Street             FRANCES A. GRIMALDI, ESQ.
Syracuse, New York 13204-1498


ULMER, BERNE LAW FIRM          RICHIK SARKAR, ESQ.
1660 West 2nd Street          JOSEPH A. CASTRODALE, ESQ.
Suite 1100
Cleveland, OH 44113-1448

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>DECISION AND ORDER</u>

Plaintiff Viet Gragg commenced this action in 2003, asserting various claims growing out of a failed, prospective business relationship between Gragg and defendant International Management Group (UK), Inc., ("IMG") and certain of its affiliates, described collectively as "the world's largest licensing agency."  At the heart of plaintiff's complaint is his claim that he was lulled into the belief that he and IMG were collaboratively to plan and operate two joint business ventures, but that IMG ultimately broke off the relationship and independently embarked upon the contemplated projects, misappropriating and exploiting his ideas and proprietary work product.  Plaintiff's complaint, as amended, asserts an array of federal and state law claims including, *inter alia,* under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, and for breach of contract.

Currently pending before me for resolution are several issues, some of which result from a remand of the matter from the assigned district judge to me for reconsideration of certain discovery-related rulings previously made.  The disputes before me have been fully briefed, and

were the subject of oral argument conducted on March 14, 2007, at the close of which decision was reserved with regard to certain issues, while a bench decision was rendered to address others. This decision both embraces the matters on which decision was reserved, and memorializes the court's oral determinations, which are incorporated herein by reference.

I.      BACKGROUND[1]

For more than twenty years, plaintiff has worked as an independent producer, performer and promoter of entertainers and entertainment companies, having rendered services to clients within the Northern District of New York, as well as both nationally and internationally.  Second Amended Complaint (Dkt. No. 129) ¶ 13.  Responding to a solicitation from IMG, a licensing agency whose clients include athletes, performing artists, writers, fashion models, broadcasters, lending institutions, sponsors of world class events, cultural institutions, and recreational resorts, inviting submissions from prospective clients for business partnership collaborations and new relationships with the company, Gragg

---

[1]      In light of the posture of this case, which despite its age is still procedurally in its formative stage, the following facts, which serve as a backdrop for the court's rulings, are drawn principally from plaintiff's second amended complaint, the material contents of which in large part are vigorously contested by the defendants.

initiated e-mail contact on April 19, 2001, expressing an interest in

pursuing a joint business venture with IMG.  *Id.* ¶¶ 14, 16.  In response to

his e-mail inquiry, plaintiff was directed to J. Stephen Wright, who was

identified as the managing director of IMG Artists, LLC.  *Id.* ¶ 17.  On June

13, 2001, plaintiff submitted an introductory letter to Wright, describing a

business which Gragg had developed several years earlier in Binghamton,

New York, involving the use of lyrics from famous songs in greeting cards,

limited edition prints, apparel, jewelry and other merchandise.[2]  *Id.* ¶¶ 17-

18.

As a result of discussions occurring over the next several months,

the parties' relationship ripened to a point where on October 5, 2001, they

entered into an agreement appointing plaintiff to act as a consultant to

IMG Artists.   Second Amended Complaint (Dkt. No.  129) ¶¶ 20-28.

Under that agreement, Gragg worked toward development of the

Lyractures project, renamed at his initiative to "Words of Art."  *Id.* ¶ 29.

In December of 2001, IMG and Gragg agreed to amend the

consultancy pact to allow for the creation of a joint venture business plan,

based upon an idea already formulated by Gragg.  Second Amended

---

[2]       Gragg's business venture was marketed by him under the monicker
"Lyricatures."  Second Amended Complaint (Dkt. No. 129) ¶ 14.

Complaint (Dkt. No. 129) ¶ 30.  Pursuant to that amended agreement,
Gragg continued to work toward development of the Words of Art project.
*Id.* ¶¶ 35-36.  A business plan developed for the project was ultimately
presented by Gragg in or about January of 2002 to IMG representatives,
including Wright, calling for the creation of a joint venture between Gragg
and IMG, to be known as "IMG Artchives."  *Id.* ¶ 38.  It was contemplated
that under that banner, the parties would represent artists and cultural
institutions seeking to license, brand and merchandise archives stored in
various medium formats for both new and existing IMG clients.  *Id.* ¶¶ 38-
39.

Based upon representations by IMG's Wright, to the effect that the
company was planning to move forward with the contemplated joint
venture, Gragg was asked to prepare a "deal" memorandum, which was
completed and presented to Wright on January 25, 2002.  Second
Amended Complaint (Dkt. No. 129) ¶¶ 40-41.  On February 1, 2001, IMG
sent Gragg an e-mail memorializing the joint venture terms upon which the
parties had previously agreed.  *Id.* ¶ 45.  Following receipt of that
agreement, which was to have become immediately effective, Gragg
began operating under its terms.  *Id.* ¶ 46.

During the weekend of March 23-24, 2002, plaintiff contacted Wright by telephone to discuss the project and a request by Wright for changes to the parties' February 1, 2002 joint venture agreement.  Second Amended Complaint (Dkt. No. 129) ¶ 53.  Wright thereafter wrote internally on March 25, 2002 to IMG employees Claire Culver, Rebecca Boyle and Claire Dacam, advising them of the terms of the proposal discussed by him with Gragg, and stating he was prepared to act "immediately" on the agreement.  *Id.* ¶ 54.  On March 25, 2002, Culver responded by sending a revised business plan to Wright, who in turn forwarded an e-mail to Gragg on March 28, 2002 confirming the parties' revised understanding.  *Id.* ¶¶ 58-59.

Plaintiff maintains that IMG later improperly repudiated the parties' agreement, claimed as its own the project known as "IMG Artchives", and together with co-defendant Brand DNA, a foreign corporation headquartered in Paris, France, continued to work toward the development of the Words of Art and Artchives projects, without Gragg's participation.  Second Amended Complaint (Dkt. No. 129) ¶¶ 66-85.

## II.   PROCEDURAL HISTORY

Plaintiff commenced this action on July 18, 2003, at the time

6

asserting diversity of citizenship as the basis for this court's subject matter jurisdiction.  Dkt. No. 1.  In his original complaint, which named only International Management Group (UK), Inc. as a defendant, plaintiff asserted various state law claims, including breach of contract, promissory estoppel, quantum meruit, breach of fiduciary duty, fraud, and unfair competition.  *See id.*

In response to plaintiff's complaint, defendant moved seeking its dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure or, alternatively, for dismissal of certain of plaintiff's claims based upon the common law doctrine of *forum non conveniens.  See* Dkt. Nos. 16-18.  In a memorandum-decision and order issued on February 4, 2004, Senior District Judge Neal P. McCurn granted defendant's motion, in part, dismissing all but four counts of plaintiff's complaint – three alleging breach of contract, and the fourth asserting a claim of unfair competition – and additionally denying defendant's motion to dismiss based upon *forum non conveniens.*  Dkt. No. 26.

During the course of my oversight in the case, which has been vigorously litigated and as a result has had a tortured procedural history, I have been presented with several discovery issues, one of which

concerned the mistaken disclosure by defendants' counsel of certain

privileged e-mails contained on a CD-ROM produced to plaintiff's counsel

during the course of discovery.  Dkt. Nos. 54-57.  Following briefing and

oral argument, I found that the disclosure of those materials was

inadvertent and, after examining the circumstances surrounding that error,

concluded that it did not provide a basis for finding a waiver of the

attorney-client privilege with regard to the disputed documents.[3]

Another separate but somewhat related issue previously raised

before me concerned plaintiff's request to take the deposition of Lisa

Levine, Esq., an attorney representing the defendants in this case in a

litigation capacity.  Applying the test laid out in relevant case law, including

principally *Shelton v. American Motors Corp.*, 805 F.2d 1323 (8th Cir.

1986), I declined to permit the deposition of Attorney Levine to be taken,

finding that such a measure would be ill-advised in light of her capacity as

an attorney performing in a litigation role.

Appeal by the plaintiff of my discovery orders resulted in Judge

McCurn's issuance of a memorandum-decision and order, dated April 27,

---

[3]     My determination regarding inadvertent disclosure was discussed on the
record during a hearing conducted on November 3, 2004, and subsequently
memorialized in a written order issued on December 1, 2004 incorporating that oral
decision by reference.  *See* Dkt. Nos. 61, 63.

2006, reversing my determination regarding inadvertent waiver, and remanding the matter to me for further consideration. Dkt. No. 249. In that order, Judge McCurn also directed reconsideration of my determination concerning plaintiff's request for permission to depose Attorney Lisa Levine, based upon the potential inter-relationship between that issue and the attorney-client privilege waiver question. *Id.*

On June 6, 2005, plaintiff filed a second amended complaint in the action, naming additional defendants and asserting a variety of claims, including those brought under RICO. Dkt. No. 129. The filing of that amended complaint was met with another dismissal motion, interposed by most of the IMG defendants on July 21, 2005.[4] Dkt. No. 148. While defendants' second dismissal motion, which has not yet been argued, is fully briefed, plaintiff now requests the opportunity to make additional submissions with respect to that motion. The defendants, while opposing that request, have also sought leave to submit further materials in the

---

[4]    A separate dismissal motion was filed a day earlier by defendant IMG Artists LLC, which at the time was separately represented. Dkt. No. 146. That motion was later withdrawn, *see* Dkt. No. 160, and all of the defendants are now represented by common counsel.

In another motion, also filed on July 21, 2005, defendants sought dismissal of plaintiff's complaint, once again on the basis of *forum non conviens*. Dkt. No. 149. That motion, however, was rejected by the court, with leave to refile depending upon the outcome of the pending dismissal motion.

9

event plaintiff's request is granted.

III.    <u>DISCUSSION</u>

A.    <u>Supplementation of the Record</u>

Having succeeded in an earlier effort to submit materials neither contained within nor expressly referred to in his complaint for consideration by Judge McCurn on the pending dismissal motion, *see* Dkt. No. 205, plaintiff now seeks leave to further augment the record with additional materials in connection with that motion, *see* Dkt. No. 244.  That request, which defendants oppose, *see* Dkt. No. 245, has been referred by Senior District Judge McCurn to me for consideration.  *See* Dkt. No. 254.

Plaintiff's request for permission to furnish the court with extrinsic materials, including principally deposition transcripts, exposes his fundamental misunderstanding as to the nature of the pending dismissal motion.  Defendants' dismissal motion calls upon the court to gauge the facial sufficiency of plaintiff's second amended complaint, applying a standard which is neither controversial nor rigorous in its requirements. Under the prevailing test, a court may not dismiss a complaint unless "'it appears beyond doubt that the plaintiff can prove no set of facts in support of his [or her] claim which would entitle him [or her] to relief.'"  *Davis v.*

*Goord*, 320 F.3d 346, 350 (2d Cir. 2003) (quoting *Conley v. Gibson*, 355 U.S. 41, 45-46, 78 S. Ct. 99, 102 (1957)).  In deciding a Rule 12(b)(6) dismissal motion, the court must accept the material facts alleged in the complaint as true, and draw all inferences in favor of the non-moving party.  *Cooper v. Pate*, 378 U.S. 546, 546, 84 S. Ct. 1733, 1734 (1964); *Miller v. Wolpoff & Abramson, LLP*, 321 F.3d 292, 300 (2d Cir.), *cert. denied*, 540 U.S. 823, 124 S. Ct. 153 (2003); *Burke v. Gregory*, 356 F. Supp. 2d 179, 182 (N.D.N.Y. 2005) (Kahn, J.).  The court's determination as to the sufficiency of a complaint must take into consideration the fact that the governing rules require only that the defendant be afforded "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, 78 S. Ct. at 103; *see Phillips v. Girdich*, 408 F.3d 124, 127-29 (2d Cir. 2005).

In support of his request that he be permitted to supply the court with additional evidence for purposes of the pending dismissal motion, plaintiff stresses its relevance to the claims set forth in his complaint.  These proffered materials, however, are composed of purely extrinsic materials not attached as exhibits to or otherwise incorporated by reference within plaintiff's complaint, including deposition testimony.  Absent conversion of

11

the motion to one for summary judgment, such materials have no place for consideration in a motion to dismiss under Rule 12(b)(6); when materials of a nature now urged by the plaintiff are offered in opposition to a motion to dismiss for failure to state a cognizable claim upon which relief may be granted, they are properly rejected and not considered by the court in ruling on the motion.[5]  *See Friedl v. City of New York*, 210 F.3d 79, 83-84 (2d Cir. 2000); *see also Zeising v. Kelly*, 152 F. Supp. 2d 335, 341-42 (S.D.N.Y. 2001).

Since the materials which plaintiff now proposes to file, however relevant they may be to his claims or any potential defenses, are not properly considered on a dismissal motion, his application for permission

---

[5]     A distinctly different situation is presented in cases involving motions challenging jurisdiction under Rule 12(b)(2) of the Federal Rules of Civil Procedure.  In such instances, the courts have recognized a limited exception to this rule and have countenanced the submission of extrinsic materials when supporting or opposing such motions.  *See Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56, 58-59 (2d Cir. 1981); *see also Pilates, Inc. v. Pilates Inst., Inc.*, 891 F. Supp. 175, 178 n.2 ("Because '[a] Rule 12(b)(2) motion is inherently a matter requiring the resolution of factual issues outside of the pleadings . . . all pertinent documentation submitted by the parties may be considered in deciding the motion.'") (quoting *John Hancock Prop. & Cas. Ins. Co. v. Universale Reins. Co., Ltd.*, No. 91 CIV. 3644, 1992 WL 26765, at *6 (S.D.N.Y. Feb. 5, 1992)); *American Centennial Ins. Co. v. Seguros La Republica, S.A.*, No. 90 Civ. 2370, 1991 WL 60378, at *3 (S.D.N.Y. Apr. 8, 1991) ("It is well-settled that in considering jurisdictional motions, the Court may consider evidence outside the pleadings in reaching its decision . . . .").

to supplement the record will be denied.[6]

B.    Inadvertent Disclosure

Before addressing the merits of the inadvertent disclosure issue and ruling on the plaintiff's claim of attorney-client privilege waiver, I must first determine the appropriate law to be applied.  When the issue was first before me, at a time when subject matter jurisdiction in the case was predicated upon diversity of citizenship, IMG argued that English law should apply, discerning it to be more favorable than the corresponding New York law principles advocated by the plaintiff.  *See* Defendant's Letter Brief Dated September 15, 2004 (Dkt. No. 54) at p. 3.  Now, given an intervening, favorable change in that state's position regarding the issue, defendants urge application of Ohio law, which was not even mentioned as a possible alternative in their earlier submissions, based upon the status of defendant International Management Group (UK), Inc. as a corporation formed and operating under Ohio law.[7]

_____

[6]    During the recent March 14, 2007 hearing the court established a supplemental briefing schedule for the submission of additional *legal* argument regarding the pending dismissal motion.  That schedule has since been amended, on stipulation of the parties.  *See* Dkt. No. 269.

[7]    In 2006, the Ohio Supreme Court limited the circumstances under which waiver of the attorney-client privilege could be found to those outlined under Ohio Revised Code § 2317.02(A), expressly rejecting judicially created exceptions.  *See Jackson v. Greger,* 110 Ohio St. 3d 488, at ¶ 1 (2006) (citing *State v. McDermott,* 72

Rule 501 of the Federal Rules of Evidence provides that federal common law governs questions of privilege in cases involving federal question jurisdiction, while state law governs in other instances. *See* Fed. R. Evid. 501; *see also Bayne v. Provost*, 359 F. Supp. 2d 234, 239 (N.D.N.Y. 2005); *Grinnell Corp. v. ITT Corp.*, 222 F.R.D. 74, 76 (S.D.N.Y. 2003). Accordingly, were the case postured as it was at the outset, with diversity providing the basis for subject matter jurisdiction, the court would be required to engage in the choice of law analysis in order to determine which jurisdiction should provide the rule of law to be applied in deciding

---

Ohio St. 3d 570, 574 (1995) (declining "to add a judicially created waiver to the statutorily created privileged)). Presumably, the holding in *Jackson* also includes the rejection of a judicially created rule of waiver resulting from the inadvertent disclosure of privileged materials. To date, there do not appear to be any reported decisions from that state's courts applying that ruling to the issue of inadvertent disclosure, nor does it appear certain that the view now espoused by the defendants would be shared by the courts there. In a pre-*Jackson* decision, an Ohio appellate court observed that the effect of inadvertent disclosure of privileged documents on the attorney-client privilege was "essentially a matter of first impression in the state of Ohio", adopting a "middle ground", case-by-case approach in which a court should weigh (1) the reasonableness of the precautions taken by the party asserting the privilege; (2) the time taken to rectify the inadvertent error; (3) the scope and nature of the discovery proceedings; (4) the extent of the disclosure in relation to the discovery proceedings; and (5) the overarching question of fairness. *See Miles-McClellan Constr. Co. v. Board of Educ. Westerville*, Nos. 05AP-1112, 1113, 1114 and 1115, 2006 WL 1817223 (Ohio Ct. App. June 30, 2006); *see also Evenflo Co., Inc. v. Hantec Agents Ltd.*, No. 05-CV-346, 2006 WL 2945440, at *5 (S.D. Ohio Oct. 13, 2006) (stating, in a decision issued two days after *Jackson*, that district courts within the Sixth Circuit, as well as Ohio state courts, adopt the "middle ground" approach to cases of inadvertent disclosure of privileged materials during discovery) (citing *Miles-McClellan*).

the issue.[8]  In this instance, however, since the centerpiece of plaintiff's

amended complaint is a series of federal claims under RICO, I will look to

federal law to inform my analysis of whether waiver has occurred through

inadvertent disclosure.[9]  *See Woodward Governor v. Curtiss-Wright Flight*

*Sys.,* 164 F.3d 123, 126 (2d Cir. 1999); *see also von Bulow by Auersperg*

*v. von Bulow*, 811 F.2d 136, 141 (2d Cir. 1987) (applying federal law of

privilege in dispute involving RICO claim as well as state law claims based

on pendent and diversity jurisdiction); *Rouson v. Eicoff*, No. 04-CV-2734,

2006 WL 2927161, at *4 (E.D.N.Y. Oct. 11, 2006).

---

[8]     As a federal court whose subject matter jurisdiction is premised upon diversity of citizenship, under that circumstance the court would be required to apply the choice of law rules of New York, the forum state.  *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496-97,  61 S. Ct. 1020, 1021-22 (1941); *GlobalNet Financial.com, Inc. v. Frank Crystal & Co., Inc.*, 449 F.3d 377, 382 (2d Cir. 2006).  Under New York law, "[t]he first step in any case presenting a potential choice of law issue is to determine whether there is an actual conflict between the laws of the jurisdiction involved."  *In re Allstate Ins. Co. (Stolarz)*, 81 N.Y.2d 219, 223, 597 N.Y.S.2d 904, 905 (1993).  A conflict of law exists "[w]here the applicable law from each jurisdiction provides different substantive rules[.]"  *Curley v. AMR Corp.,* 153 F.3d 5, 12 (2d Cir. 1998).  Upon a finding that the competing laws of the relevant jurisdiction were truly in conflict, the court would then be required to resolve the conflict by engaging in an interest analysis, examining which jurisdiction has the greater concern over the specific issues presented.  *GlobalNet Financial.com, Inc.,* 449 F.3d at 384; *Schultz v. Boy Scouts of Am., Inc.,* 65 N.Y.2d 189, 197, 481 N.Y.S.2d 90, 95 (1985).

[9]     As Judge McCurn noted in his decision, New York and federal law do not materially differ with respect to principles governing inadvertent disclosure.  Dkt. No. 249 at p. 13; *see also Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc.,* 232 F.R.D. 160 (E.D.N.Y. 2005) (in this diversity action, magistrate judge applied the federal standard, whereas the district judge applied New York law, both arriving at the same result).

Under federal law, whether waiver of an attorney-client privilege will be found, based upon inadvertent disclosure of a privileged document, depends upon examination of four factors, including 1) the reasonableness of any precautions taken to prevent inadvertent disclosure of privileged documents; 2) the relative volume of the privileged documents in relation to the full extent of the discovery at issue; 3) the length of time taken by the producing party to raise and rectify the issue; and 4) overarching considerations of fairness.  *Atronic Int'l,* 232 F.R.D. at 163-64 (citing *United States v. Rigas,* 281 F. Supp. 2d 733, 738 (S.D.N.Y. 2003)); *see also Trudeau v. New York State Consumer Prot. Bd.*, 237 F.R.D. 325, 339 (N.D.N.Y. 2006) (Treece, M.J.); *In re Natural Gas Commodity Litig.*, 229 F.R.D. 82, 86 (S.D.N.Y. 2005).  Addressing the first factor, in this instance I find that the measures taken by the defendants to avoid the potential for disclosure of privileged materials were woefully deficient.  Based upon versions of the relevant chain of events which are largely non-conflicting, it appears that defendants' outside litigation counsel asked Claire Dacam, Esq., an in-house attorney at IMG, to prepare and produce to him all documents relative to the proposed project with Viet Gragg.   That task, in turn, was delegated by Attorney Dacam to

16

Emma Rigney, a non-attorney assistant to Stephen Wright.  Ms. Rigney then prepared and compiled in electronic format a disk containing those materials and forwarded them directly to defendants' outside counsel who in turn, without first reviewing the documents, sent the disk to plaintiff's attorney.

Defendants argue that it was reasonable for their outside counsel to rely upon in-house Attorney Dacam to make the requisite privilege review, and to assume that it had been accomplished before the disk was forwarded by Ms. Rigney to counsel.  While defendants' litigation counsel indeed may have made that assumption, there admittedly was no discussion between that attorney and Ms. Dacam, Ms. Rigney, or anyone else at IMG that could reasonably have led him to conclude that such an analysis had been made.  Given the significance of the attorney-client privilege and the potential consequences associated with a waiver of that privilege, this nonchalance leads me to conclude that reasonable precautions were not taken to prevent the disclosure of privileged materials.

In arguing against a finding of waiver, defendants place heavy reliance upon the Southern District of New York's decision in *Lois*

17

*Sportswear, U.S.A., Inc. v. Levi Strauss & Co.,* 104 F.R.D. 103 (S.D.N.Y.

1985).  That case, however, is not only readily distinguishable, but the

differences between its facts and the circumstances now presented

underscore the appropriateness of a finding of waiver in this case.  In *Lois

Sportswear,* plaintiff's counsel was permitted to review between seven and

eight boxes of materials responsive to defendant's document demands.

104 F.R.D. at 104. Following that review, plaintiff requested production of

approximately 3,000 pages, representing roughly twenty percent of the

documents inspected.  *Id.*  Included among the requested materials were

twenty-two documents claimed by the defendant to be privilege-protected.

*Id.*  The court noted that the documents provided had been assembled by

paralegals under guidance provided by the defendant's deputy general

counsel who, upon discerning that some of the documents being produced

for inspection were privileged, instructed the paralegals "to segregate

documents of that kind from those which would be produced for [plaintiff's

counsel's] inspection".  *Id.* at 105.  Addressing the sufficiency of these

measures, the court concluded that "[u]nder these particular facts, the

evidence is *barely* preponderate that the disclosure of the privileged

materials was inadvertent and a mistake, rather than a knowing waiver."

*Id.* (emphasis supplied).

Turning to the second relevant factor, I note that four privileged documents are at issue, out of a total of only approximately 200 e-mails included within the CD-ROM.  This factor weighs heavily in favor of the plaintiff, given that the materials at issue are not particularly voluminous and, consequently, it would appear that the task associated with reviewing the contents of the CD-ROM in order to determine whether it contained any privileged communications would not have been particularly onerous.

The third factor in the *Atronics* test is neutral in this case.  To his credit, promptly after reviewing the contents of the CD-ROM in question and determining that it contained some potentially privileged materials, plaintiff's attorney alerted defendants and the court to the potential problem.  Consequently, it is unknown when, if at all, defendants would have discovered their mistake and taken measures to rectify it.

The last relevant factor requires examination into the overarching consideration of fairness.  Defendants have argued that because the disputed materials involve litigation strategy, rather than relating to the underlying transaction, it would be unfair to find waiver despite the inadvertence.  While I accept this contention as material to the question, I

find that at best the issue of fairness does not militate strongly in favor of either party, and is far overshadowed by the defendant's failure to implement reasonable measures to avoid inadvertent disclosure.

In sum, after weighing the four factors identified as relevant under the federal common law of waiver, and particularly given the casual nature of defendants' efforts to insure against inadvertent disclosure, I find that through their disclosure of such materials defendants have waived the privilege associated with the disputed documents.  With this finding, a question remains as to the appropriate scope of that waiver – a matter on which the parties differ markedly.  Though citing no cases to support this proposition, plaintiff argues that a subject matter waiver should be applied solely based upon defendants' inadvertent disclosure, opening the door to full disclosure including deposition of defendants' litigation attorneys. Defendants, by contrast, argue for a more reasoned, limited waiver.

The courts which have addressed this issue heavily favor defendants' position, with most finding that in the event of the inadvertent disclosure of privileged documents, a limited waiver should be recognized, extending only to the materials in issue.  *See, e.g., Parkway Gallery Furniture, Inc. v. Kittinger/Pennsylvania House Group, Inc.,* 116 F.R.D. 46,

52 (M.D.N.C. 1987); *Martin v. Valley Nat'l Bank of Arizona,* No. 89 Civ.

8361, 1992 WL 196798, at *4 (S.D.N.Y. Aug. 6, 1992); *see also In re:*

*Grand Jury Proceedings,* 219 F.3d 175, 190 (2d Cir. 2000).  Because I find

that the decisions in these cases are well-reasoned, striking an

appropriate balance between the need to preserve the sanctity of the

privilege and the importance of a litigant's ability to retain access to

relevant documents disclosed through failure to take proper precautions to

protect the privilege, and can uncover no persuasive authority militating in

favor of a broader finding of waiver, I will limit the scope of my finding of

waiver, based upon the finding of inadvertent disclosure, to the documents

in issue, which plaintiff's counsel will be allowed to retain and utilize freely

for purposes of this litigation.

As additional support for his quest for the finding of a broader,

subject matter waiver, plaintiff renews an argument made earlier in the

litigation.  In essence, Gragg argues that while the inadvertent disclosure

itself may not establish a waiver, it is sufficient when considered in

combination with other disclosures waiving the attorney-client privilege.

Specifically, in support of this argument plaintiff cites defendants'

disclosure, after initially claiming privilege, of a series of documents

21

involving in-house attorney Claire Dacam, and additionally contends that in her declaration to the court in support of defendants' dismissal motion, Attorney Levine disclosed privileged documents.  Neither of these arguments, however, is at all persuasive.

As for Claire Dacam, it has been established to the court's satisfaction that disclosure of documents involving her was made based upon the realization that although she is an in-house attorney, she also served in a business function at IMG, and that the documents in question were overwhelmingly related to the business aspects of her role, and therefore not shielded by the attorney-client privilege.  In that regard, when choosing what documents to withhold as privileged the defendants were faced with the conundrum often encountered when attorneys become involved internally with a client's business transactions.  As the Second Circuit has observed, "[a]ttorneys frequently give to their clients business or other advice which, at least insofar as it can be separated from essentially professional legal services, gives rise to no privilege whatever [sic]."  *Colton v. United States,* 306 F.2d 633, 638 (2d Cir.), *cert. denied,* 371 U.S. 951, 83 S. Ct. 505 (1963); *see also Elliot Assoc. L.P. v. Republic of Peru,* 176 F.R.D. 93, 97 (S.D.N.Y. 1997) (finding that communication is

not privileged if the attorney involved is hired for business or personal advice).  Because I adhere to my earlier finding, based upon my review, that the documents produced by the defendants, although involving communications with counsel, were predominantly business-related I conclude that the production of those documents does not provide a basis to find a broader waiver, as now urged by the plaintiff.

I have also reviewed carefully the contents of Lisa Levine's declaration to the court, together with its attachments, Dkt. No. 18,  to determine whether this second basis for finding a broader waiver contains merit.  None of the items attached as exhibits to that declaration appear to be privileged materials.  Indeed, the one specifically cited by the plaintiff in support of his position in this regard is a March 28, 2002 e-mail which was sent from J. Stephen Wright to Viet Gragg – a document which therefore does not appear on its face to be privileged.  *See* Dkt. No. 18, Exh. E.

In short, despite plaintiff's argument to the contrary I discern no basis to find a wholesale, subject matter waiver of the attorney-client privilege such as that now urged by the plaintiff.  Accordingly, I will limit my finding of waiver to those documents inadvertently disclosed by the defendants during the course of pretrial discovery.

C.   Levine Deposition

In his initial motion, plaintiff sought leave to depose Lisa K. Levine, Esq. who, according to a declaration given to the court, *see* Dkt. No. 18, at the time was an associate counsel for IMG Worldwide, Inc. and International Management Group (UK), Inc.[10]  I initially denied that request, based upon Ms. Levine's status as counsel for plaintiff's adversary and my finding that the matters sought to be covered in the requested deposition would likely be shielded by privilege or encompassed within the work product doctrine.  Though not expressly reversing that determination, Judge McCurn remanded the matter to me for further consideration in view of his ruling regarding the privilege question and the potential interplay between the two issues.

Based upon the original briefing and statements made during the earlier oral argument, and as confirmed during the most recent hearing and supplemental submissions, it is abundantly clear to me that plaintiff's avowed intention, in seeking leave to take Ms. Levine's deposition, is to inquire concerning her gathering of documents for presentment to the court in connection with defendants' initial dismissal motion, claiming that

---

[10]   According to defendants, Ms. Levine left IMG's employ in April of 2005. *See* Sarkar Letter of 2/23/07 (Dkt. No. 263) at p. 12.

24

certain documents were withheld and that others may have been altered, and additionally to determine why e-mail communications included within the CD-ROM were not disclosed earlier during the litigation.  These are matters which are particularly within the realm of Ms. Levine's role as a litigation attorney.

The issue of deposing the attorney for one's advocate was discussed by the Eighth Circuit in its seminal decision in *Shelton v. American Motors Corp.,* 805 F.2d 1323 (8th Cir. 1986).  There, noting with disapproval the increased propensity for parties seeking to depose an adversary's litigation counsel, that court concluded that the practice should be permitted only in limited circumstances.  805 F.2d at 1326-27.  While flatly rejecting the imposition of an absolute rule prohibiting such depositions, the *Shelton* court cautioned that they should be taken only when 1) no other method exists for obtaining the required information other than to depose counsel; 2) the information sought is both relevant and non-privileged; and 3) the information is crucial to the preparation of the case.  *Id.* at 1327.

Providing helpful guidance to jurists within this circuit, the Second Circuit relatively recently seized upon an opportunity to discuss the issue.

25

*See In re: Subpoena Issued to Dennis Friedman, Esq.,* 350 F.3d 65 (2d Cir. 2003).  There, while acknowledging *Shelton* and its underlying rationale, the court cautioned that the Eighth Circuit's analysis in the case should not be applied mechanically to preclude the deposition of an adversary's attorney in every instance.[11]  *See In re: Friedman,* 350 F.3d at 70-72; *Patsy's Italian Restaurant, Inc. v. Banas,* Nos. 06-CV-00729, 06-CV-5857, 2007 WL 174131, at *2-3 (Jan. 19, 2007); *Nastasia v. New Fairfield School Dist.,* No. Civ. 04-CV925, 2006 WL 1699599, at *2 (D. Conn. June 19, 2006).  The Second Circuit went on, however, to articulate many of the same factors cited by the Eighth Circuit in its decision in *Shelton* as relevant to the question of the propriety of deposing an opposing litigant's attorney, including " the need to depose the lawyer, the lawyer's role in connection with the matter on which discovery is sought and in relation to the pending litigation, the risk of encountering privileged and work-product issues, and the extent of discovery already conducted." *In re: Friedman,* 350 F.3d at 72; *see also Patsy's Italian Restaurant, Inc.,* 2007 WL 174131, at *2.

---

[11]     Because the appeal in *In re: Friedman* was ultimately dismissed as moot, the court's discussion regarding *Shelton* constituted *dicta.  Patsy's Italian Restaurant, Inc.,* 2007 WL 174131, at *2.

As Judge McCurn noted, in previously rejecting plaintiff's efforts to depose Attorney Levine I focused heavily on the privilege issue, concluding that because the information sought was protected the deposition should not be taken.  Since that time, while finding that the four documents inadvertently disclosed to plaintiff's counsel are not privileged, I have nonetheless declined to adopt the broad subject matter waiver urged by the plaintiff.  Consequently, since the matters which plaintiff seeks to probe during Ms. Levine's proposed deposition all quintessentially involve litigation conduct and thus presumptively implicate privilege and/or attorney work product, this factor alone is outcome determinative on the question of whether her deposition should be allowed, without the need to explore the remaining two factors.[12]  *See, e.g., In re Bilzerian*, 258 B.R. 846, 849 (M.D. Fla. 2001) (rejecting discovery request, which would necessitate the deposition of opposing trial counsel, because deposition "would seriously impinge on the work product" of counsel and would produce no relevant, non-privileged

---

[12]     Focusing solely on this element, I could ostensibly permit a limited deposition of Attorney Levine, limited to the four e-mails for which a privilege waiver was found.  Because I am convinced, however, based upon the statements of plaintiff's counsel, that such a deposition would invariably entail excursion into areas covered by the work product doctrine and attorney-client privilege, when applying the remaining portion of the test I choose not to permit even that limited deposition.

information); *S.E.C. v. Morelli*, 143 F.R.D. 42, 46-47 (S.D.N.Y. 1992) (refusing to allow defendant to depose members of plaintiff's litigation team because defendant sought to explore the mental processes and strategies of plaintiff's counsel in violation of the work product doctrine).

Addressing the balance of the relevant test under *In re Friedman* and *Shelton*, I additionally find that the remaining two considerations likewise weigh in favor of denying plaintiff's request to depose Ms. Levine.[13]  While plaintiff's counsel raises and desires to probe with Attorney Levine issues that would be of concern to the court, if substantiated, regarding the potential withholding of documents which should have been produced during the course of pretrial discovery, the court is convinced that there are alternative means available to obtain the information other than to depose the attorney tasked with gathering and producing the documents.  One can well imagine that this would be a subject which many, if not most, litigants would wish to explore with

---

[13]   The fact that Attorney Levine is no longer employed by IMG does not alter the *Shelton* calculus, since the privilege remains intact notwithstanding termination of the attorney-client relationship.  *See, e.g., Swidler & Berlin v. United States*, 524 U.S. 399, 406, 118 S. Ct. 2081, 2086 (1998) (noting the general rule that the attorney-client privilege survives even the death of the client); *United States v. Tomero*, 471 F. Supp. 2d 448, 448 & n.10-11 (S.D.N.Y. 2007) ("[P]rivileged communications do not lose protection simply because the attorney-client relationship ends.").

counsel for an opposing party, were the practice to be freely endorsed by the courts.  Because a ruling permitting plaintiff to depose Attorney Levine would in this instance open the door to the sort of mischief that the courts in *Shelton* and *In re: Friedman* sought to avoid through the imposition of a stringent test for allowing such depositions, I find that this factor weighs against permitting her deposition to be taken.

While one could argue that the third relevant factor may weigh in plaintiff's favor, in that some of the information sought may be critical to the outcome of the case, including on the issue of spoliation, I do not find that it is sufficiently overwhelming as to outweigh the first two factors, and in any event it does not trump the finding that what plaintiff seeks to uncover during Ms. Levine's deposition is overwhelmingly privileged information and/or attorney work product.

The cases cited by plaintiff, in support of his request to depose Attorney Levine, address situations that are readily distinguishable from the circumstances at bar.  In *Calvin Klein Trademark Trust v. Wachner,* for example, the court, while acknowledging the dangers inherent in sanctioning the practice, permitted a party's non-litigation counsel to be deposed on the limited subject of public disclosures made by counsel and

expressly authorized by the client.  124 F. Supp. 2d 207, 210-11 (S.D.N.Y. 2000).  In this case, by contrast, in seeking permission to depose Attorney Levine plaintiff proposes to embark upon an expedition which would by its very manifest nature extend into areas protected by the attorney-client privilege and work product doctrine.  *See Nastasia,* 2006 WL 1699599, at *3.

Despite the Second Circuit's apparent modification of the arguably more strict approach taken by the Eighth Circuit in *Shelton,* analysis of its decision in *In re: Friedman* reflects that it continues to give recognition to the dangers inherent in exposing litigation counsel to broad discovery.  *In re: Freidman,* 350 F.3d at 70 (citing *Hickman v. Taylor,* 329 U.S. 495, 506-14, 67 S. Ct. 385) (1947)).  Like the Eighth Circuit in *Shelton,* the Second Circuit has also recognized that depositions of opposing attorneys are generally disfavored.  *United States v. Yonkers Bd. of Educ.,* 946 F.2d 180, 185 (2d Cir. 1991).  The testimony which plaintiff seeks to elicit from defendants' litigation counsel falls into the same category as that involved in *Shelton,* encompassing counsel's role in responding to discovery, in order to satisfy itself that the adversary has fully complied with outstanding discovery requests.  *See Shelton*, 805 F.2d at 1328-29.  The danger

inherent in permitting such a practice is readily apparent.  Accordingly, weighing the relevant factors and finding that plaintiff's need for the deposition testimony of Attorney Levine is far outweighed by the other countervailing factors to be considered, I adhere to my prior ruling and deny plaintiff's application for leave to depose Lisa Levine, Esq.[14]

IV.   SUMMARY AND ORDER

_____Because the information which plaintiff seeks leave to add to the record before Senior District Judge McCurn relating to the pending Rule 12(b)(6) dismissal motion would not be properly considered on such a motion, absent its conversion to one seeking the entry of summary judgment, plaintiff's request for permission to supplement the existing record will be denied, without prejudice to the right to submit such materials in the event that the court opts for conversion.  Turning to plaintiff's claim of inadvertent disclosure, I find, weighing the four factors informing the court's analysis under federal common law, that there has been a limited waiver of attorney-client privilege through the inadvertent disclosure of privileged materials, but additionally conclude that the waiver

---

[14]   My ruling regarding Ms. Levine is limited to the matters which plaintiff announced he would be seeking to explore in her deposition.  To the extent that Ms. Levine may possess factual information that is not privileged and is relevant to the claims and defenses in the action, the court might take a different view regarding her deposition.

should be limited in scope to the materials produced.  Lastly, having

freshly performed an analysis of the issue, taking into consideration the

matters which counsel has announced a desire to probe, I conclude that

plaintiff should not be permitted to depose Lisa Levine, Esq., one of

defendants' litigation attorneys.  Based upon the foregoing it is hereby

ORDERED as follows:

1)      Plaintiff's application for permission to supplement the record

currently before Senior District Judge McCurn in connection with the

pending dismissal motion by the submission of additional evidentiary

materials is DENIED, without prejudice.  This ruling does not preclude the

submission of additional legal argument in accordance with the briefing

schedule previously set by this court, as recently amended.

2)      Plaintiff's request for a finding of attorney-client privilege

waiver, based upon the inadvertent disclosure of privileged materials by

defendants' counsel, is GRANTED, limited only to the materials so

provided, which materials plaintiff's counsel shall be permitted to keep and

to utilize freely in connection with the pending litigation.

3)      Plaintiff's request for permission to depose Lisa Levine, Esq.,

on matters involving her conduct in connection with this litigation is

DENIED.

4)     The stay of discovery previously implemented in this case is hereby EXTENDED until lifted by the court.

5)     Having announced that he intends to retain new counsel, to be substituted in the place of his current attorney of record, plaintiff is directed to do so promptly, and to arrange for the filing of a proper notice of appearance or substitution of attorney's form, within sixty days following disposition by Senior District Judge Neal P. McCurn of the pending dismissal motion.


Dated:     April 5, 2007
           Syracuse, NY


David E. Peebles
U.S. Magistrate Judge

33