UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

VIET GRAGG,

        Plaintiff,

  -v-                                  5:03-CV-904 (NPM / DEP)

INTERNATIONAL MANAGEMENT
GROUP (UK), INC., IMG WORLDWIDE,
INC., IMG ARTISTS LLC; INTERNATIONAL
MANAGEMENT GROUP (OVERSEAS), INC.;
And BRAND DNA,

        Defendants.

_____

APPEARANCES:                        OF COUNSEL:

OFFICE OF ROBERT C. KILMER     ROBERT C. KILMER, ESQ.
Attorney for Plaintiff
1220 State Street, Suite 220
Binghamton, NY 13901

NEAL P. McCURN, Senior District Court Judge

MEMORANDUM-DECISION AND ORDER

Plaintiff Viet Gragg ("Gragg ") comes before the court seeking compensatory and punitive damages of $14,117,890.00 from defendant Brand DNA for injury Gragg suffered from an alleged scheme to defraud him by defendants International Management Group (UK), Inc., International Management Group Worldwide, Inc., International Management Group Artists, LLC, International Management Group (Overseas), Inc., and Brand DNA

(collectively, "defendants"). A settlement was reached between Gragg and the IMG defendants on March 3, 2008, and a stipulation of dismissal with prejudice was ordered by a magistrate judge of this court on March 14, 2008 (Doc. No. 319). On July 1, 2008, this court granted a default judgement (Doc. No. 322) against Brand DNA, the only remaining defendant in this action. In that decision of the court, Gragg was directed to contact this court to arrange a date and time for a hearing on the issue of damages. The damages hearing was held on December 8, 2008, and at the end of said hearing the court reserved judgment. Based on Gragg's submissions for his motion for default judgment and the information gathered at that hearing, including a comprehensive video deposition from Gragg's accountant, the court hereby renders its decision on the damage award.

**I.     BACKGROUND**

Familiarity with the procedural history and facts of this lengthy and convoluted litigation is presumed, pursuant to the numerous decisions previously rendered by this court, and only the pertinent facts necessary to resolve the issue of damages will be addressed. Plaintiff filed his original complaint against defendants on July 18, 2003 (Doc. No. 1). In his second amended complaint filed June 6, 2005, Gragg alleges four causes of action against the defendants, including Brand DNA. Gragg asserted (1) a RICO violation; (2) breach of fiduciary duty;

(3) misappropriation; and (4) unfair competition.  Brand DNA was personally and timely served notice of Gragg's second amended complaint (Doc. No. 129) on June 24, 2005, as evidenced by the affidavit of service attached to Gragg's motion for default judgment (Doc. No. 321-2) as Exhibit A (<u>See</u> <u>also</u> Doc. No. 162).  Brand DNA failed to plead or otherwise raise a defense as provided for in the Federal Rules of Civil Procedure ("Fed. R. Civ. P.").  Despite an entry of default filed by the Clerk of the Court as to Brand DNA on August 3, 2005 (Doc. No. 164), and this court's order granting Gragg's motion for default judgment on July 1, 2008, Brand DNA has not filed an appearance in this action to make a timely motion to set aside the default judgment.

## II.   DISCUSSION

### A.   Standard for Default Judgment

Judgment by default is one of the most severe sanctions which the court may apply, and "its use must be tempered by the careful exercise of judicial discretion to assure that its imposition is merited.  However, where one party has acted in willful and deliberate disregard of reasonable and necessary court orders and the efficient administration of justice, the application of even so stringent a sanction is fully justified and should not be disturbed." <u>Trans World Airlines, Inc. v. Hughes</u>, 332 F.2d 602, 614 (2d Cir. 1964).

Because this is a damages award pursuant to an order granting default judgment, the court will again set forth the law governing default judgments. Fed. R. Civ. P. Rule 55(a) states in pertinent part that "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a) (West 2009). "The procedural steps contemplated by the Federal Rules ... following a defendant's failure to plead or defend ... begin with the entry of a default upon a plaintiff's request." Meehan v. Snow, 652 F.2d 274, 276 (2d Cir. 1981).

"While a party's default is deemed to constitute a concession of all well pleaded allegations of liability, it is not considered an admission of damages ... Damages, which are neither susceptible of mathematical computation nor liquidated as of the default, usually must be established by the plaintiff in an evidentiary proceeding in which the defendant has the opportunity to contest the amount." Volkswagen AG v. V.W. Parts, Inc., 2009 WL 1045995 at *1 (citing Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp., 973 F.2d 155, 158 (2d Cir.1992)).

In determining the award of damages in a default judgment, in a matter such as the one before the court, where the plaintiff's claim is for a sum that can be

made reasonably certain by computation, the court again looks to Rule 55 of the Federal Rules, which states in pertinent part that "[t]he court may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to: (A) conduct an accounting; (B) determine the amount of damages; (C) establish the truth of any allegation by evidence; or  (D) investigate any other matter...." Fed.R.Civ.P. Rule 55(b)(2) (West 2009).

Allegations in a complaint and an affidavit of plaintiff's counsel asserting the amount of damages sustained by the plaintiff, without more, is insufficient evidence upon which to ascertain the damage award. Credit Lyonnais Securities (USA), Inc. v. Alcantara, 183 F.3d 151, 154-55 (2d Cir. 1999).  "Even when a default judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." Id. (internal citations omitted).  After a court has granted a motion for default judgment, "pursuant to Rule 55(c), the defendant has an opportunity to seek to have the default set aside." Id.

"A default judgment is a final action by the district court in the litigation - one that may be appealed.  In an appeal from a default judgment, the court may review both the interlocutory entry of default and the final judgment." Enron Oil

Corp. v. Diakuhara, 10 F.3d 90, 95 (2d Cir. 1993). The court reiterates that Brand DNA has filed no appeal since entry of the order granting default judgment on July 1, 2008.

### B. Awarding RICO Claims pursuant to a Default Judgment

Count one in plaintiff's second amended complaint alleges a violation of the Racketeer Influenced and Corrupt Organization Act ("RICO").[1] Plaintiff states that defendants IMG and Brand DNA "engaged in a continuing, concerted course of conduct directly or indirectly with the purpose and effect of defrauding [plaintiff] of money or property (Doc. 129 ¶ 88), and specifically, "[t]he predicate acts forming the pattern of racketeering activity are mail fraud in violation of 18 U.S.C. §§ 1341 and 1346 and wire fraud in violation of 18 U.S.C. §§ 1343 and 1346." Id. at ¶ 94. Gragg sets forth an extensive list of electronic mail exchanges between IMG offices in London and Brand DNA offices in Paris, which outlined plans to pursue and capitalize on Gragg's intellectual property, both before and after cutting ties with Gragg on May 2, 2002.[2]

To establish a claim for a civil violation under RICO, "a plaintiff must show

---

[1] A comprehensive definition of "racketeering activity" can be found at 18 U.S.C.A. § 1961. Prohibited activities under RICO are codified at § 1962. (West 2009).

[2] As set forth at length in previous memorandum-decision and orders of this court, the electronic mails and information therein were inadvertently disclosed to Gragg's counsel.

that he was injured by defendants' (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." Cofacredit, S.A. v. Windsor Plumbing Supply Co., Inc., 187 F.3d 229, 242 (2d Cir.1999), quoting Azrielli v. Cohen Law Offices, 21 F.3d 512, 520 (2d Cir.1994). The guidelines for civil remedies pursuant to RICO are codified at 18 U.S.C.A. § 1964, which states in pertinent part that "[a]ny person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee ...." 18 U.S.C.A. § 1964(c) (West 2009). The Court of Appeals in this circuit has affirmed district court awards of treble damages pursuant to RICO in default judgment actions. See, e.g., D'Orange v. Feely, 101 F.3d 1393 (2d Cir. 1996) (appeals court affirmed district court's denial of motion to set aside entry of default and award of treble damages for default judgment pursuant to RICO).

A pattern of racketeering activity under RICO is defined as at least two acts of racketeering activity committed in a 10 year period. Cofacredit, 187 F.3d at 242 (quoting 18 U.S.C. § 1961(5)). A plaintiff can establish a pattern of racketeering activity by (1) proving that a series of related predicate acts occurred over a substantial period of time-no less than two years; or (2) showing that there was a

threat of continuing criminal activity beyond the period during which the predicate acts were performed. Cofacredit, 187 F.3d at 242.  In H.J., Inc. v. Northwestern Bell Tel. Co., the Supreme Court held that "[p]redicate acts extending over a few weeks or months and threatening no future criminal conduct do not satisfy this requirement: Congress was concerned in RICO with long-term criminal conduct." 492 U.S. 229, 242 (1989).  In the case at bar, plaintiff alleges the racketeering activity took place from sometime prior to May 2, 2002[3] to the present, which was June 6, 2006, the date of the court filing. Doc. No. 129 at ¶ 89.  The electronic mail exchanges between the IMG defendants and Brand DNA convince the court of long-term efforts by these parties to injure Gragg by misappropriating his intellectual property and business interest.  The court finds that Gragg has sufficiently stated a claim for a RICO violation for the purposes of a default judgment award.

### E.   Compensatory and Punitive Damages

"While compensatory damages are intended to redress the concrete loss that a plaintiff has suffered by reason of the defendant's wrongful conduct, punitive damages ... operate as private fines intended to punish the defendant and to deter

---

[3] Plaintiff cites May 2, 2002 as the day that IMG broke off all communications with him, announcing through its counsel that IMG thought it best "not to continue our collaboration." Doc. No. 129 at ¶ 65.

future wrongdoing." In re Simon II Litigation, 407 F.3d 125, 135-36 (2d Cir. 2005) (citing Cooper Industries, Inc. v. Leatherman Tool Group, Inc., 532 U.S. 424, 432 2001) (internal quotations omitted).  Punitive damages are awarded for the purpose of deterrence and retribution. State Farm Mutual Automobile Ins. Co. v. Campbell, 538 U.S. 408, 416 (2003).  Accordingly, "[i]t should be presumed a plaintiff has been made whole for his injuries by compensatory damages, so punitive damages should only be awarded if the defendant's culpability, after having paid compensatory damages, is so reprehensible as to warrant the imposition of further sanctions to achieve punishment or deterrence." Id. at 419.

In Exxon Shipping Co. v. Baker, 128 S.Ct. 2605, 2626 (2008), the Court held that "[a]lthough we have consistently rejected the notion that the constitutional line is marked by a simple mathematical formula, we have determined that few awards exceeding a single-digit ratio between punitive and compensatory damages, to a significant degree, will satisfy due process.  When compensatory damages are substantial, then a lesser ratio, perhaps only equal to compensatory damages, can reach the outermost limit of the due process guarantee." (citing State Farm, 538 U.S. at 425) (internal quotations omitted).

### D.  Application of the Law to the Facts of this Case

As stated in the court's MDO granting Gragg's motion for default judgment,

Brand DNA has not attempted to defend itself in the present action, nor has it attempted to seek relief from the default entered by the Clerk of the Court, or to set aside the default judgment granted by this court in July of 2008. In the July 1, 2008 order, this court opined that Brand DNA has had sufficient notice of the present litigation. The court also found that because Brand DNA had never appeared in this action, either personally or by a representative, and because Gragg and the IMG defendants reached settlement in this action, with said settlement documents under seal, Gragg's allegations have not been adjudicated by this court or by a jury. Consequently, the court, put in a position of disadvantage by having before it only Gragg's demand for damages in excess of $14 million, held a damages hearing where it heard testimony by counsel for Gragg and viewed a video deposition of Gragg's accountant.

      1.     Damages Hearing

At the damages hearing held on December 8, 2008 and in his motion for default judgment (Doc. No. 321), Gragg presented a videotaped deposition as well as an affidavit of Jeffrey A. Getzel ("Getzel"), founder and managing partner of the certified public accounting firm of Getzel, Shiff & Ross, of Woodbury, New York. Getzel's Curriculum Vitae reveals an accomplished business appraiser, expert witness, business consultant, forensic auditor, auditor, accountant and tax

advisor. Doc. No. 321-5, Appendix 1.

In the case at bar, Gragg was fortunate in one respect: he had negotiated a business plan with the defendants which allowed him to reasonably forecast the revenue projections and business valuation with reasonable certainty. At the hearing, plaintiff's counsel informed the court that Getzel made the most conservative estimate at every turn, and adjusted downward with respect to the projected revenue for the years for which there were no revenue projections. The analysis in Getzel's comprehensive report is limited to five years, and is derived from the projections generated by IMG and Gragg. Id., p. 5-6.

Getzel reviewed spreadsheets prepared jointly by plaintiff and IMG which forecast cash flow (for the project at issue in this action) for the years 2003 through 2007. Accordingly, Getzel was able to use actual projections to reach his determination that plaintiff's share of projected revenue for this time period was $568,820.00. Doc. No. 321-5 at pp. 2-6. In his valuation of the business, subject to a buy-back provision in the original agreement allowing IMG the option of a 50% buyout of Gragg's interest in the business after five years (Doc. No. 321-5, pp. 25-27), Getzel avers that based upon the projected net revenue in excess of the projected expenses for the last three years ending April 30, 2005, 2006, and 2007, of $500,630.00,  $618,854.00 and $654,336.00, respectively, the average net

revenues of this business would be $591,273.00.  "Based upon capitalization rates ranging from the low side of 20% and the high side of 29%, the range of value of this income stream or business would be from a minimum of $2,038,900.00 to $2,956,400.00 (rounded). Id., Appendix 6.  Taking the minimum business valuation and dividing it in half results in damages of $1,019,450.00, Gragg's share of the value of the business taken from him.

On plaintiff's first claim pursuant to RICO, he is entitled to treble damages pursuant to 18 U.S.C.A. § 1964(c).  Taking Getzel's determination of $568,820.00 of lost profits, plus the 50% of the valuation of the business as a whole, $1,019,450.00, trebled (3 x $1,588,270.00), gives the court a total of $4,764,810.00.  Accordingly, the court awards this amount to Gragg pursuant to his motion for default judgment.

Plaintiff seeks duplicative awards of the remaining three counts in this action, basing this decision on the fact that Brand DNA has opted not to participate in this litigation in any way, despite being aware of its pendency.  Gragg argues that because Brand DNA has not raised any objection to the manner in which damages are being sought, it has therefore waived any argument regarding the awarding of damages, including punitive damages.  Gragg cites Metron Technology Distribution Corp. v. Discreet Industries Corp, 189 Fed.

Appx. 3 (2d Cir. 2006) for this premise. The Metron court held that defendants waived any argument regarding whether a jury had awarded duplicative damages because of their failure to raise the issue in its request to charge the jury, or to lodge a timely objection. Id. As set forth supra, it is well-settled law that the purpose of compensatory damages is to redress the concrete loss that a plaintiff has suffered by reason of the defendant's wrongful conduct. In re Simon II Litigation, 407 F.3d at 135. In other words, the purpose is to make that plaintiff whole. The court finds that the trebled amount awarded pursuant to RICO in the amount of $4,764,810.00 is sufficiently to make Gragg whole in the instant case.

    2.    Punitive damages

The court next considers punitive damages against Brand DNA. To put this issue in context, the court revisits information gleaned from the lengthy docket in this case and set forth in previous decisions of the court. During the discovery process, after receiving printed e-mails as part of the response to his first document production request, plaintiff requested the hard drives from IMG (UK)'s computers where those e-mails had been stored. In lieu of providing the hard drives, an administrative assistant in IMG (UK)'s London office prepared a CD-ROM, which contained 218 e-mails. Because IMG (UK)'s in-house counsel was on vacation, the CD-ROM was not reviewed before it was sent to IMG (UK)'s

outside counsel, local attorney Mitchell Katz. Because Attorney Katz mistakenly assumed that it had been reviewed by IMG (UK)'s in-house counsel, he did not open the CD-ROM or review its contents before turning it over to plaintiff's attorney. As plaintiff states in his memorandum in support of default judgment, "IMF forwarded a CD-Rom to the undersigned containing over 200 emails that had been previously withheld. Those emails exposed a flagrant conspiracy between Brand DNA and IMG to appropriate [p]laintiff's project and take it forward without [p]laintiff." Doc. No. 321 at p.10.

  This court concurred with plaintiff's assessment of the electronic messages that inadvertently wound up in Gragg's possession. Consequently, over the objection of IMG, the court allowed plaintiff to file a second amended complaint, which is much more detailed and fleshed out than the original, as he relied on the windfall of previously undisclosed non-privileged emails that he was most likely never meant to see. Gragg asks for punitive damages of one million dollars on the breach of fiduciary duty claim, one million dollars on the misappropriation claim, and one million dollars on the unfair competition claim. The court, supra, declined to award duplicative amounts on these counts. However, at the damages hearing, Gragg's counsel argued that Gragg was forced to settle the case with the IMG defendants without having all of the documents that would have been

available had Brand DNA chosen to avail itself of the court.  In addition, counsel argues that he is asking the court for damages related to just one project from what was to have been a broader undertaking between the parties.  At the hearing, counsel for Gragg also stated that Brand DNA made an express statement that the court could not reach Brand DNA, despite the fact that Brand DNA does business in the United States of America.  Gragg argues, and the court concurs, that Brand DNA should not be entitled to an offset for the settlement amount paid to Gragg by the IMG defendants, which would in effect reward Brand DNA's wrongdoing.

The incontrovertible facts of this case leave little doubt that the defendants actively conspired to relieve Gragg of his intellectual property, his profits, and his business.  The court deems punitive damages to be warranted, and awards plaintiff $1,000,000.00 in punitive damages against Brand DNA on each of the three counts, for a total of $3,000,000.00 in punitive damages.  The court finds this to be within the acceptable guidelines of a less than 1:1 ration, consistent with the case precedent set forth above.

### III.   CONCLUSION

For the reasons set forth <u>supra</u>, the court hereby awards plaintiff Viet Gragg compensatory damages in the amount $568,820.00 of lost profits, plus 50% of the $2,038,900.00 valuation of the business as a whole, or $1,019,450.00, for a total

of $1,588,270.00. This amount is to be trebled pursuant to 18 U.S.C.A. § 1964(c), for a total of $ 4,764,810.00 in compensatory damages. The court also awards $3,000,000.00 in punitive damages, for a total of $7,764,810.00. The total amount is due and owing to Viet Gragg by Brand DNA, with interest calculated pursuant to the rate provided for by 28 U.S.C. § 1961(a), commencing from the date of the entry of judgment. The Clerk is instructed to close this case. The court shall retain jurisdiction of this matter solely for the purposes of enforcing the default judgment damage award.

    SO ORDERED.

April 24, 2009

                        */s/ Neal P. McCurn*
                        Neal P. McCurn
                        Senior U.S. District Judge